IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| McRO, INC., d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1513-LPS-CJB |
| | ) | |
| ROCKSTAR GAMES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| McRO, INC., d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1517-LPS-CJB |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| McRO, INC., d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1519-LPS-CJB |
| | ) | |
| 2K GAMES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Presently pending in these three related cases are Defendants Rockstar Games, Inc. ("Rockstar"), Take-Two Interactive Software, Inc. ("Take-Two") and 2K Games, Inc.'s ("2K") (collectively, "Defendants") motions to dismiss Plaintiff McRo, Inc., d/b/a Planet Blue's ("Plaintiff" or "McRo") direct, induced and willful infringement claims against them, pursuant to

Federal Rule of Civil Procedure 12(b)(6). (D.I. 18; Civil Action No. 12-1513-LPS-CJB, D.I. 17; Civil Action No. 12-1519-LPS-CJB, D.I. 17)[1] For the reasons that follow, the Court recommends that Defendants' motions be GRANTED-IN-PART AND DENIED-IN-PART.

## I. BACKGROUND

Plaintiff commenced these actions on November 21, 2012, alleging that Defendants infringed certain claims of two of its patents, U.S. Patent No. 6,307,576 ("the '576 patent") and 6,611,278 ("the '278 patent"). (D.I. 1) Before Defendants answered, Plaintiffs filed a First Amended Complaint in all three actions, and in the *Take-Two* action, thereafter filed a Second Amended Complaint. (D.I. 4, 16; Civil Action No. 12-1513-LPS-CJB, D.I. 15; Civil Action No. 12-1519-LPS-CJB, D.I. 15)[2] In the complaints at issue here, Plaintiff alleges direct infringement (pursuant to 35 U.S.C. §§ 271(a) and 271(g)), induced infringement, and willful infringement of

---

[1] Unless otherwise noted, the allegations in the respective pleadings at issue are identical, save for changes to the name of the accused party. As a result, the opening and reply briefs of the three Defendants here are, in essence, identical as to the claims relating to that party, and Plaintiff filed the same answering brief in all three cases. For these reasons, the Court addresses all three motions together in this Report and Recommendation. To avoid redundancy, representative citations in this Report and Recommendation will be to the docket and the complaint-at-issue in the *Take-Two* matter, unless otherwise noted.

[2] In the *Take-Two* action, Plaintiff's filing of the Second Amended Complaint appears to have been in violation of Federal Rule of Civil Procedure 15(a), as it was filed without consent of the opposing party or leave of court. (D.I. 19 at 1) However, because the Defendant focuses its challenge on the factual sufficiency of that complaint, and because the Court cannot discern prejudice to the Defendant in doing so, the Court will permit the filing of the Second Amended Complaint in that action, and will go on to address the sufficiency of its allegations pursuant to Rule 12(b)(6). *Cf. DeGuiseppe v. Vertis, Inc.*, No. 04-4348, 2005 WL 2271865, at *2 (E.D. Pa. Sept. 15, 2005); *Gardner v. Authorized Distribution Network, Inc.*, Civ. A. No. 91-5335, 1992 WL 245873, at *1 (E.D. Pa. Sept. 21, 1992).

2

both the '576 and '278 patents by some or all Defendants. (D.I. 16 at ¶¶ 14, 15, 19, 20).[3]

Defendants thereafter each filed the motions to dismiss, pursuant to Rule 12(b)(6). On July 31, 2013, these cases were referred to the Court by Judge Leonard P. Stark to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (D.I. 25; Civil Action No. 12-1513-LPS-CJB, D.I. 26; Civil Action No. 12-1519-LPS-CJB, D.I. 24)

## II. DISCUSSION

Defendants' motions allege that Plaintiff has insufficiently pleaded claims of direct and induced infringement (as to all three Defendants) and willful infringement (as to Rockstar and Take-Two).[4] The Court will consider these arguments in turn.

### A. Direct Infringement

To properly plead a claim of direct infringement, a complaint must at least comply with Form 18 of the Federal Rules of Civil Procedure. *See K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283-84 (Fed. Cir. 2013) ("[T]o the extent any conflict exists between *Twombly* (and its progeny) and the Forms regarding pleadings requirements, the Forms control."); *Clouding IP, LLC v. Amazon.com, Inc.*, C.A. Nos. 12-641-LPS, 12-642-LPS, 12-675-

---

[3] Both Count I (containing allegations regarding the '576 patent) and Count II (containing allegations regarding the '278 patent) of the respective complaints contain nearly verbatim language, differing only as to the patent number referenced. (*Compare* D.I. 16 at ¶¶ 13-17, *with id.* at ¶¶ 18-22) To the extent the Court cites below only to the allegations as to one of the patents-in-suit, it does so nevertheless in order to address the respective allegations as to both patents.

[4] In the motions, Defendants have not moved to dismiss Plaintiff's claims of direct infringement under Section 271(g) on any grounds distinct from those referenced below.

LPS, 2013 WL 2293452, at *2 (D. Del. May 24, 2013).[5] Form 18 provides the following exemplary language relating to the required allegation of infringement:

> 3. The defendant has infringed and is still infringing the Letters Patent by making, selling, and using *electric motors* that embody the patented invention, and the defendant will continue to do so unless enjoined by this court.

Fed. R. Civ. P., App. of Forms, Form 18 (emphasis in original).[6] Thus, as a general matter, "Form 18 does not require [plaintiff] to specify 'what functionality infringed, or any facts that show how [defendant] performs even one step of a claimed method.'" *Clouding IP*, 2013 WL 2293452, at *2 (citation omitted). And with regard to identification of accused products, "Form 18 requires only identification of a general category of products, for example 'electric[] motors[,]'" *id.*, or a general identification of an allegedly infringing method, *Gammino v. American Tel. & Tel. Co.*, Civ. No. 12-666-LPS, 2013 WL 6154569, at *3 (D. Del. Nov. 22, 2013). In the end, "[t]he touchstones of an appropriate analysis under Form 18 are notice and facial plausibility" and while "these requirements serve as a bar against frivolous pleading, it is not an extraordinarily high one." *K-Tech Telecomms.*, 714 F.3d at 1286 (internal citations omitted).

---

[5] While review of the sufficiency of a pleading pursuant to Rule 12(b)(6) is analyzed under regional circuit law, the Federal Circuit has explained that its prior decisions "regarding the requirements of Form 18 and its relationship to the pleading standards set forth in *Twombly* and *Iqbal* [were] dictated by Supreme Court precedent" and that it would thus interpret those requirements in the same manner, no matter what Circuit a case originated from. *K-Tech Telecomms.*, 714 F.3d at 1283 n.1.

[6] In total, Form 18 requires "(1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *K-Tech Telecomms.*, 714 F.3d at 1283 (citation omitted).

With regard to its allegations of direct infringement, Plaintiff's complaints allege:

> Upon information and belief, [Defendant] has, as part of the development process for its computer and/or video games that include 3-dimensional animated characters, used and continues to use software processes in the United States for automatically adding lip-synchronization and facial expression to the animated characters using the phonetic structure of the words spoken by the characters and has made, used, offered to sell, sold, and/or imported, and continues to make, use, offer to sell, sell, and/or import, computer and/or video games created using those processes in the United States, including this judicial district. By using the aforementioned software processes, [Defendant] has directly infringed the [patent-in-suit] under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents. By using, offering to sell, selling, and/or importing computer and/or video games created using the aforementioned software processes, [Defendant] has been and is now infringing the [patent-in-suit] under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

(D.I. 16 at ¶¶ 14, 19).

In arguing for dismissal of the direct infringement claims, Defendants analogize the allegations here to those found wanting in two other cases in this Court. First, citing the decision in *Fifth Market, Inc. v. CME Group, Inc.*, C.A. No. 08-520 GMS, 2009 WL 5966836, at *1 (D. Del. May 14, 2009), Defendants aver that the complaint "merely defines accused products by reference to the claims [in the patent-in-suit], without providing any guidance as to which categories of products allegedly infringe." (D.I. 19 at 5). Second, quoting the decision in *Eidos Communications, LLC v. Skype Technologies SA*, 686 F. Supp. 2d 465, 468 (D. Del. 2010), Defendants assert that the complaint "merely identifies 'examples of large technology areas, not genres of products[,]'" and argues that the description of such products "would incorporate most

or all of" Defendants' products. (*Id.*)[7]

The Court disagrees that these cases are analogous. In *Fifth Market*, the direct infringement allegation was found insufficient because the complaint's sole reference to any product of the defendant appeared in the facts section of the pleading; no such reference appeared in the count of infringement in question, which instead cited only to undefined "products and methods covered by the claims of the asserted patents" and contained no reference to "a single infringing product or method." *Fifth Market*, 2009 WL 5966836, at *1; *St. Clair Intellectual Prop. Consultants, Inc. v. Apple Inc.*, C.A. No. 10-00982-LPS, 2011 WL 4571812, at *3 (D. Del. Sept. 30, 2011) (distinguishing *Fifth Market* in this way). And in *Eidos*, the complaint did not "specify a[n accused] product or method at all" and made only a "vague" reference to defendants' "'communication system products and/or methodologies'" in that regard. *Eidos*, 686 F. Supp. 2d at 467-68. In contrast, here, although the allegations are not particularly detailed, in the counts of direct infringement at issue Plaintiff does at least identify the specific processes (i.e., a method) alleged to infringe (the use of "software processes in the United States for automatically adding lip-synchronization and facial expression to . . . animated characters using the phonetic structure of the words spoken by the characters") and the identifiable categories of products ("computer and/or video games that include 3-dimensional characters") that are said to utilize those processes. (D.I. 16 at ¶¶ 14, 19) Thus, Plaintiff's factual allegations are not

---

[7] Contrary to the nature of the allegations in Plaintiff's Second Amended Complaint against it, (*see, e.g.*, D.I. 16 at ¶¶ 11, 12), Defendant Take-Two also avers that it does not make or develop video games; rather, its subsidiaries do. (D.I. 19 at 1, 4). Nevertheless, at this stage of the proceedings, the Court is to take the Plaintiff's factual allegations as true. *See St. Clair Intellectual Prop. Consultants, Inc. v. Apple Inc.*, C.A. No. 10-00982-LPS, 2011 WL 4571812, at *2 n.2 (D. Del. Sept. 30, 2011); *Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, Civ. No. 10-63-LPS, 2011 WL 1557930, at *2 (D. Del. Apr. 21, 2011).

problematic in the same way as were the allegations in *Fifth Market* and *Eidos*. *See also Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 353-54 (D. Del. 2010) (finding that a complaint satisfied Form 18 when it "identified general categories of accused products[,]" specifically "processors, chipsets, and motherboards" with the Court also noting that the allegations also briefly described the means by which those products infringe).[8]

Beyond these arguments, Defendants assert that the allegations are insufficient because they do not address "which [particular computer or video] games are at issue"; "what qualities those games share that would infringe the specific mechanisms for lip-synchronization claimed in the patens-in-suit"; or "how any video game products allegedly infringe." (D.I. 19 at 6, 7) The Court cannot square those arguments with the reality that Form 18 does not require a plaintiff to list specific accused products, nor to "specify 'what functionality infringed, or any facts that show how [the defendant] performs even one step of a claimed method.'" *Clouding IP*, 2013 WL 2293452, at *2 (citation omitted). Indeed, our Court has noted that "[i]dentification of one allegedly infringing product or method for each count of [direct] infringement alleged in a complaint is generally sufficient to meet the requirements of Form 18." *Gammino*, 2013 WL 6154569, at *3.

Form 18's requirements are minimal. In the end, under this Court's precedent, Plaintiff's

---

[8] Defendant cites to a decision of the United States District Court for the Northern District of California, in which that Court found, *inter alia*, that similarly-worded complaints filed by Plaintiff in that district did not state a claim for direct infringement. (D.I. 20, ex. A) To the extent that this decision relied upon the conclusion that the facts pleaded in the respective complaints were insufficient to meet Form 18's requirements, (*id.* at 5-6), the Court finds that the cases cited in support either involve dissimilar factual circumstances to those here, or are not reconcilable with this Court's precedent as to what types of allegations satisfy Form 18's minimal requirements.

allegations regarding direct infringement are sufficient to satisfy those requirements. *See, e.g., Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 775-76 (D. Del. Mar. 29, 2013) (finding direct infringement allegations sufficient where plaintiff "expressly identified a general category of products, power supply controllers, and further restricted that category to controllers that include certain features and circuits").[9]

### B. Induced Infringement

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." In order to prove induced infringement, the patentee "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotation marks and citation omitted). While the sufficiency of allegations of direct infringement are measured by whether they comply with Form 18, the general principles of *Twombly* and *Iqbal* apply to indirect infringement claims. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336-37 (Fed. Cir. 2012).

The relevant allegations of induced infringement are as follows:

> Upon information and belief, [Defendant] actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the [patent-in-suit] under 35

---

[9] As to Defendants' assertions that the product categories associated with the infringement allegations constitute "most or all" of the products they are alleged to make, this Court has found such an argument to be unavailing at the motion to dismiss stage, "as narrowing of [such] issues regarding infringement is 'best achieved through the use of traditional mechanisms of discovery.'" *St. Clair*, 2011 WL 4571812 at *2 (citation omitted); *see also Infineon Techs. AG v. Volterra Semiconductor Corp.*, No. C-11-6239 MMC, 2012 WL 5988461, at *3 (N.D. Cal. Nov. 29, 2012) (citing cases).

8

> U.S.C. § 271(b) by contracting with game developers to directly infringe the [patent-in-suit] by using the aforementioned software processes to create computer and/or video games that [Defendant] makes, uses, offers to sell, sells, and/or imports, all with knowledge of the [patent-in-suit] and its claims; with knowledge that its game developers will use the methods claimed in the [patent-in-suit]; and with the knowledge and the specific intent to encourage and facilitate those infringing uses of the aforementioned software processes through the creation and dissemination of instructional materials, product manuals, and technical materials related to, referenced by or incorporated within the statement of work between Defendant and its developers. [Defendant] has had knowledge of the [patent-in-suit] since at least as early as January 2008 as a result of email and telephonic communications between Mr. Maury Rosenfeld and at least Peter Welch and its actions constitute knowing and willful infringement of the [patent-in-suit]. [Defendant] also has knowledge of its induced infringement of the [patent-in-suit] through the filing and service of the Complaint and despite this knowledge continues to commit tortuous conduct by way of patent infringement.

(D.I. 16 at ¶¶ 15, 20)[10] Defendants contend that these allegations are wanting in several respects, (D.I. 19 at 8-10), which the Court will address in turn.

### 1. Identity of Direct Infringers

First, Defendants appear to argue that the complaints fail to sufficiently identify who the direct infringers are. (D.I. 19 at 8-9) Identification of a specific third-party direct infringer is not required to survive a motion to dismiss an induced infringement claim, so long as the factual

---

[10] These are the allegations in the Second Amended Complaint against Take-Two. The induced infringement allegations against Rockstar are identical, except that notice there is alleged to have occurred "since at least as early as January 2008 as a result of correspondence and other communications between Mr. Maury Rosenfeld and Rockstar's legal department in and around that time . . . ." (Civil Action No. 12-1513-LPS-CJB, D.I. 15 at ¶¶ 15, 20) The induced infringement allegations are also identical with respect to 2K, except that they do not include a sentence alleging knowledge since January 2008; the allegations are only that 2K has had the requisite knowledge through the filing and service of the original Complaint against it. (Civil Action No. 12-1519-LPS-CJB, D.I. 15 at ¶¶ 15, 20)

9

allegations are sufficient to allow the inference that at least one direct infringer exists. *In re Bill of Lading*, 681 F.3d at 1336; *Fairchild Semiconductor Corp.*, 935 F. Supp. 2d at 777 n.6. Taking into account the nature of the allegations above (relating to direct infringement via the use of certain software processes in the creation of certain computer or video games, alleged to be induced by Defendants that are a part of the video game industry), the identification of "game developers" as the alleged direct infringers is sufficient to meet this requirement. (D.I. 16 at ¶¶ 15, 20)

### 2. Knowledge that Direct Infringer's Acts Constituted Infringement

A plaintiff must also allege facts plausibly showing that the defendant had knowledge that the alleged direct infringer's acts constituted infringement. *See Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2013 WL 2295344, at *1 (D. Del. May 24, 2013) (citing *In re Bill of Lading*, 681 F.3d at 1339). While a plaintiff need not "prove its case at the pleading stage[,]" what is required is that the facts pleaded, "when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced." *In re Bill of Lading*, 681 F.3d at 1339, 1343.

Defendants aver that although the complaints "allege[] that [the Defendant] had knowledge of the patents-in-suit as of January 2008," they are "entirely silent on knowledge of infringement before this suit[.]" (D.I. 19 at 9) The Court agrees.

As to post-suit knowledge of infringement, *see Clouding IP, LLC v. Google Inc.*, C.A. No. 12-639-LPS, 2013 WL 5176702, at *1 (D. Del. Sept. 16, 2013), the complaints' allegations are simply that the game developers "us[e] the aforementioned software processes to create" infringing computer and/or video games and that Defendants have knowledge that "its game

10

developers will use the methods claimed" in the patents-in-suit, (D.I. 16 at ¶¶ 15, 20). Those "aforementioned" processes were the ones mentioned in the direct infringement claims: "software processes in the United States for automatically adding lip-synchronization and facial expression to the animated characters using the phonetic structure of the words spoken by the characters[.]" (*Id.* at ¶¶ 14, 19)

This assertion of infringing use, as Defendants note, is in reality little more than a re-phrasing of a portion of the language of Claim 1 of the '576 patent and '278 patent, respectively. (D.I. 23 at 2) It is really not much different from a bland statement that an entity has taken some unspecified action to practice a "method claimed" in the patents-in-suit. Just as important, the complaints do not really contain *any* further more specific, concrete factual allegations as to what particular type of actions the developers have actually taken, or what kind of development they have actually engaged in, that are plausibly asserted to amount to the use of the claimed methods.[11] As a result, Plaintiff's pleadings have failed to sufficiently allege Defendants' post-suit knowledge of infringing conduct by the game developers. *See, e.g., Versata Software, Inc. v. Cloud9 Analytics, Inc.*, Civil Action No. 12-925-LPS-CJB, 2014 WL 631517, at *4 (D. Del. Feb.

---

[11] The Court's finding here as to the insufficiency of the allegations of knowledge of infringing conduct (as to the claims of induced infringement) is similar to part of the rationale behind the Northern District of California's decision referenced above (finding insufficiently pleaded claims of direct infringement). (D.I. 20, ex. A at 5 (finding that complaints' "generic references to methods that automatically animate lip synchronization and facial expression in Defendants' 'computer and/or videogames' are too conclusory and too vague to state a claim for relief" and amounted to "merely a restatement of [plaintiff's] vague allegation of infringement")) The difference is that while the Court finds that these basic allegations are sufficient to meet the minimal requirements of Form 18, they are not sufficient to state a plausible claim of induced infringement pursuant to the general principles of *Twombly* and *Iqbal* and their progeny. *See, e.g., CriAgri, Inc. v. Pinnaclife, Inc.*, No. 5:11-cv-06635-LHK, 2013 WL 11569, at *2-4 (N.D. Cal. Jan. 1, 2013).

18, 2014) (finding defendant's knowledge of infringing conduct of direct infringer insufficiently pleaded where "Plaintiffs have simply identified the accused products and generically alleged that their use [by Defendants' customers] somehow infringes the asserted patents."); *cf. Clouding IP, LLC v. Rackspace Hosting, Inc.*, C.A. No. 12-675-LPS, 2014 WL 495752, at *3 (D. Del. Feb. 6, 2014) (denying motion to dismiss induced infringement claims where plaintiff alleged sufficient facts to, *inter alia*, explain what it was that the direct infringers—who were customers and end-users of defendant's products—did that amounted to the practicing of the patented systems and methods); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 564-66 (D. Del. 2012) (denying motion to dismiss induced infringement claims where complaint, which set out how the direct infringers would use accused apparatuses in an infringing manner, sufficiently identified the "allegedly infringing conduct," among other requirements).

        3.      **Specific Intent**

A plaintiff must also allege facts to allow for the plausible inference that the indirect infringer had the specific intent to induce infringement by the direct infringer (that is, that the indirect infringer *encouraged* the direct infringement). See *Pragmatus AV, LLC*, 2013 WL 2295344, at *1; *see also Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1292-93 (Fed. Cir. 2008) ("Thus, 'inducement requires evidence of culpable conduct, *directed to encouraging* another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'") (emphasis added) (citation omitted).

The complaints do reference the contractual relationship between Defendants and the game developers, and allege that Defendants encourage infringement through "creation and dissemination of instructional materials, product manuals, and technical materials" to those

developers. (D.I. 16 at ¶¶ 15, 20) These types of allegations could be sufficient to demonstrate the encouragement of patent infringement—had, for example, Plaintiff pleaded sufficient facts relating to how the game developers' actions are said to amount to infringement. But such facts are absent here. Therefore, it means little to assert that Defendants encouraged something to happen through engaging in certain actions (like the dissemination of instructional materials), where little of substance is said about what that "something" is in the first place. *See, e.g., MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012) (finding that, in the absence of sufficient factual allegations regarding defendant's knowledge that direct infringer's activities were infringing, assertions that defendant's "selling, advertising, supplying and instructing its . . . customers on the use of the infringing product" were not, "on their own," sufficient to set out a plausible allegation of specific intent to induce infringement); *see also Synopsys, Inc. v. ATopTech, Inc.*, Case No. C 13-cv-02965 SC, 2013 WL 5770542, at *15-16 (N.D. Cal. Oct. 24, 2013) (finding that plaintiff had failed to "provide bare facts supporting [the] claim" that defendant induced infringement "by dictating by its . . . instructions to users thereto the manner in which the software is used causing such infringement," and noting that plaintiff "could . . . have pled facts as to how Defendant's design or instruction were meant to induce or encourage" users to directly infringe, but did not) (internal quotation marks and citations omitted). Thus, the allegations as to this element are insufficient as well.

### C. Willful Infringement

To prove a case of willful infringement, a patent owner must demonstrate by clear and convincing evidence that the infringer acted despite an "objectively high likelihood that its actions constituted infringement" and that this "objectively-defined risk . . . was either known or

so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). At the pleading stage, a plaintiff alleging a cause of action for willful infringement must plead facts giving rise to at least a showing of objective recklessness of the infringement risk. *See, e.g., IP Venture Inc. v. Lenovo Grp. Ltd.*, Civil Action No. 11-588-RGA, 2013 WL 126276, at *2 (D. Del. Jan. 8, 2013); *MONEC*, 897 F. Supp. 2d at 236; *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*, C.A. No. 10-425-LPS, 2012 WL 1134318, at *2 (D. Del. Mar. 28, 2012).[12] Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendant. *MONEC*, 897 F. Supp. 2d at 236; *Hewlett-Packard Co.*, 2012 WL 1134318, at *2. "The complaint must 'demonstrate[] a link between the various allegations of knowledge of the patents-in-suit and the allegations that the risks of infringement' were either known or were so obvious that they should have been known." *MONEC*, 897 F. Supp. 2d at 236 (quoting *Hewlett-Packard Co.*, 2012 WL 1134318, at *3). In *Hewlett-Packard Co.*, this Court found that a complaint alleging willful infringement sufficiently demonstrated that link by "listing explicit instances where [the defendant] was aware of both the patents-in-suit and that it was either practicing or contemplating practicing technologies related to the patents-in-suit." 2012 WL 1134318, at *3.

Plaintiff's complaints assert that Defendants engaged in willful infringement of the

---

[12] *See also Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, C.A. No. 10-502-LPS, 2012 WL 3069390, at *3 (D. Del. July 27, 2012) (noting that in order to plead a claim of willful infringement, a plaintiff must meet the requirements of Rule 8 and Rule 11(b) of the Federal Rules of Civil Procedure, and must provide a "pleading equivalent to 'with a knowledge of the patent and of his infringement.'") (internal quotation marks and citation omitted).

14

patents-in-suit. (*See, e.g.*, D.I. 16 at 7)[13] Plaintiff appears to support these allegations by pointing to its communications with Defendants about the patents-in-suit beginning in January 2008. (*Id.* at ¶¶ 15, 20)

The Court agrees with Defendants that these allegations make "no link whatsoever between [Defendants' knowledge of the patents-in-suit based on the 2008 communications] and any allegations that [Defendants] knew or should have known of any objectively-defined risk that its actions infringed the patents-in-suit." (D.I. 19 at 10) Here, unlike the case in *Hewlett-Packard Co.*, the complaints do not plead sufficient specific factual matter about what Defendants or others were actually doing in order to plausibly indicate that, at any point, Defendants were or should have been aware that they were committing patent infringement. *See Chalumeau Power Sys. LLC v. Alcatel-Lucent*, Civil Action No. 11-1175-RGA, 2012 WL 6968938, at *2 (D. Del. July 18, 2012) (dismissing willful infringement claims where facts pleaded did not plausibly support the conclusion that defendants "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" or that they "knew or should have known that their actions constituted infringement of a valid patent") (internal quotation marks and citation omitted); *cf. Hand Held Prods., Inc. v. Amazon.com, Inc.*, C.A. No. 12-CV-00768-RGA-MPT, 2013 WL 507149, at *7 (D. Del. Feb. 6, 2013) (finding willful infringement allegations sufficient where plaintiff pleaded facts that not only demonstrated that defendants had prior knowledge of the patent-in-suit, but also facts indicating why "once aware [of the patent], it was obvious their mobile applications risked infringement because those

---

[13] Since Plaintiff does not allege willful infringement against 2K, reference to "Defendants" in this subsection is to Rockstar and Take-Two.

15

applications use a smartphone to capture, read, and decode barcodes."). And Plaintiff, for its part, does not specifically address Defendants' assertions regarding the insufficiency of its willful infringement claims. (D.I. 22; D.I. 23 at 4)

Accordingly, the Court finds Plaintiff's allegations insufficient to plead a claim for willful infringement.

## III. CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' motions be GRANTED-IN-PART (as to the claims of induced and willful infringement) AND DENIED-IN-PART (as to the claims of direct infringement). As to the induced infringement and willful infringement allegations, as it is within this Court's discretion to grant leave to amend, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), because amendment should be allowed "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), and because it is not clear that amendment would cause undue prejudice or would be futile, the Court recommends that Plaintiff be given leave to file a further amended complaint addressing the deficiencies outlined above. *See, e.g., Pragmatus AV, LLC*, 2013 WL 2295344, at *2.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: March 17, 2014

_Christopher J. Burke_
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE